IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| NICHOLAS SOLIVAN, | ) | |
|     Plaintiff, | ) | 10 C 1703 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| THOMAS DART, et al. | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicholas Solivan ("Solivan") filed suit against Thomas Dart, ("Dart"), Commander Michael Dembosz ("Dembosz"), Sergeant H. Thompson ("Thompson"), Officer Richard Revolorio ("Revolorio"), and the County of Cook, Illinois ("Cook County") (collectively "Defendants"), for violations of 42 U.S.C. §1983. Solivan alleges that he was a pre-trial detainee in the Cook County Department of Corrections whom the Defendants' failed to protect in violation of his constitutional rights. Defendants filed a Motion to Dismiss contending that Solivan failed to allege the requisite knowledge and culpability to state a claim of deliberate indifference. Additionally, Defendants contend that the claims against newly-added Dembosz, Thompson, Revolorio and Cook County are time-barred by the applicable Illinois statute of limitations for §1983 claims. For the following reasons, the Court denies the Motion to Dismiss with respect to Revolorio in Count I; grants the Motion with respect to Dart, Dembosz, Thompson and Cook County in Count I; and grants the Motion with respect to Count II. The Court also permits Solivan leave the file an Amended Complaint within 14 days to allege an indemnification charge against the County relating to Count I against Revolorio.

## I. STATEMENT OF FACTS

The following facts are taken from Solivan's Second Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss.[1] *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

On March 3, 2009, Solivan was a pre-trial detainee housed in Division One of the Cook County Department of Corrections ("CCDOC") in Chicago, Illinois. (Doc. 68, ¶¶2, 14). Division One is considered maximum security and houses some of the most dangerous criminals in CCDOC. (¶16). Solivan was the only person of Hispanic origin housed in Tier C, Deck 2, while the significant majority of the other inmates were African-American. (¶17). At the time, Division One employed a "half and half policy" so that only one half of the inmates on an individual tier were permitted to be out of their cells and in the dayroom at a given time. (¶18). On the date in question, Solivan's cell was in the half of cells that were open between 3:30 and 6:30 p.m. (¶19).

---

[1] Solivan initially filed suit *pro se* on March 30, 2010, against Dart and several unnamed officers who were on duty at the time of the incident on March 3, 2009. (Doc. 5). Solivan then hired counsel, who filed his appearance on November 29, 2010. (Doc. 38). After the close of discovery, Dart filed a Motion for Summary Judgment on July 7, 2011. (Doc. 61). In response, Solivan filed for leave to file a First Amended Complaint. (Doc. 63). Solivan named as Defendants Cook County and Dart in his official capacity; and substituted the John Does with Commander Dembosz in his official capacity, Thompson in his individual and official capacities, and Revolorio in his individual and official capacities. At the status hearing at which he noticed his motion, the Court expressed concern over Solivan's counsel lack of professionalism in his pleadings and respect for deadlines. (Doc. 69). Accordingly, pursuant to Federal Rule of Civil Procedure 15(a)(2) and in the interest of justice, the Court granted Solivan to file his First Amended Complaint and struck without prejudice Dart's Motion for Summary Judgment. (Doc. 69). The Defendants filed a Motion to Dismiss Solivan's First Amended Complaint. (Doc. 72). Defendants argued in their Motion to Dismiss the First Amended Complaint that the official capacity claims against newly-added defendants Dembosz, Thompson, Revolorio and County, were improper because the aforementioned are not policymakers who can be sued in their official capacity. See *Guzman v. Sheahan*, 495 F.3d 852, 860 (7th Cir. 2007) (finding that a plaintiff's official capacity claims against subordinate officers who are not final policymakers must fail). Solivan conceded mistake, seeking leave of the Court to file a Second Amended Complaint that would replace "official" with "individual" in the First Amended Complaint, and voluntarily dismissed the official capacity claims, but failed to attach the proposed Second Amended Complaint to the Motion. (Doc. 76). Defendants orally argued that such a revision would still fail to cure the deficiencies noted in the Motion to Dismiss the First Amended Complaint. (Doc. 86). By agreement of the parties, (Doc. 93), the Court applies the original Motion to Dismiss the First Amended Complaint to the Second Amended Complaint.

On that day, Solivan's cellmate exited their cell, while Solivan stayed and believed that he had locked the door. (¶20). Meanwhile, the inmates from the opened cells were allowed to walk the hallways, the designated common area and the day room. (¶21).

At approximately 3:30 p.m., seven unnamed African American inmates entered Solivan's cell and began striking him on his head and body causing severe injuries to his right eye, bleeding from his ear, numerous contusions to his face, and fractures of his lower back that left him in a wheelchair for the following 10 months. (¶23, 44). Solivan screamed for the duration of the five-minute attack as well as for the next two and a half hours. (¶¶24-25). The first time that a correctional officer attended to Solivan in his cell was at approximately 6:15 p.m. (¶ 25).

Deputy Revolorio was the Tier officer assigned to Solivan's tier during the time of the incident, and was solely responsible for 38 detainees. (¶¶7, 29). Revolorio was stationed in the control room, commonly referred to as the "bubble," where he could not see into the cells nor into the common areas where inmates might be walking outside of their cells. (¶¶22, 26). From the bubble, Revolorio could not hear if any noise was coming from the cells because the television in the day room was very loud where the inmates were also working out. (¶27). The only area from which an officer could personally observe the common areas and cells was the catwalk, and Revolorio was aware that the inmates knew when there was no officer on the catwalk. (¶28). Revolorio remained in the bubble from 3:30 p.m. to 6:18 p.m., which violated several Cook County Jail Standards ("Jail Standards"), including requiring personal observation by an officer every 30 minutes and population headcounts every hour.[2] (¶30-33).

---

[2] Pursuant to Illinois Administrative Code title 20, §701 (1997), Illinois' county jail standards require adequate supervision and frequent personal observation of detainees:

Solivan describes several additional prison conditions that he believes resulted in his alleged attack. Solivan contends that there were no light bulbs in his cell, no intercoms or emergency call buttons in the cells, and no overhead cameras on the Tier. (¶¶34-36). Most important for the incident, Solivan explains that cell doors could be manipulated by inmates by inserting toothpaste caps or bottle caps to obstruct the locking mechanism, though they would register as locked on the central panel in the bubble, as seen by Revolorio. (¶37). Solivan alleges that Revolorio knew of this problem with the cell doors long before the date of the incident, as the problem was discussed almost every day at roll call, as well as due to the bimonthly fights that erupted in Tier C Section 2. (¶38-39). Solivan alleges that Revolorio remained in the bubble from 3:30 p.m. to 6:18 p.m. though he knew there would be no direct supervision of the inmates, knew that the inmates knew this, and knew that if any inmate were attacked in his cell he would be unable to see or hear what happened. (¶41).

Solivan initially filed suit *pro se* on March 30, 2010, against Dart and several John Doe officers, whom he described as being on duty at the time of the incident on March 3, 2009. (Doc. 5). Solivan then hired counsel, who filed his appearance on November 29, 2010. (Doc. 38). In Solivan's First Amended Complaint, Solivan named as Defendants Cook County and Dart in his

---

§701.20(a)(4) "If the facility has more than one floor of detention, one jail officer shall be required for each additional floor when 15 or more detainees are confined. This minimum standard does not apply to the midnight shift provided the 30-minute supervisory checks are performed."
§701.130(a)(1) "There must be sufficient officers present in the jail, awake and alert at all times, to provide supervision while detainees are in custody."
§701.130(a)(2), "A jail officer shall provide personal observation, not including observation by a monitoring device, at least once every 30 minutes."
§701.140(c)(10), "Jail officers shall conduct population spot checks at least hourly."

official capacity. Solivan also substituted the John Doe officers with Commander Dembosz, Thompson and Revolorio in their individual capacities.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 1949.

## III. DISCUSSION

A pretrial detainee is constitutionally protected from undue punishment by the due process guarantee of the Fourteenth Amendment.[3] *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003).

---

[3] The record does not specify whether the incident occurred prior to or after Solivan's *Gerstein* hearing. The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, Solivan was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Under both the Eighth and Fourteenth Amendment

5

Defendants argue that his Complaint should be dismissed because the claims against the newly-named officers, to substitute for the John Doe Officers, are time-barred and the claim of failure to protect against Dart fails to plead a claim upon which relief can be granted.

### A. The Claims are Note Time-Barred

Defendants argue that Solivan's addition of the individual capacity claims against the newly-named Defendants Dembosz, Thompson and Revolorio violates Rule 15(c) and is barred by the applicable state of limitations. Section 1983 claims in Illinois are governed by Illinois' two-year statute of limitations on personal injury actions. *See Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). It is undisputed that Solivan named Dart and several John Doe defendants before the statute of limitations expired and Solivan argues that his amendment relates back to the original *pro se* Complaint under Rule 15(c)(1).

To substitute the John Does with Dembosz, Thompson and Revolorio as individual defendants, Solivan's amendment must satisfy Federal Rule of Civil Procedure 15(c)(1), which allows amendment to a pleading that would otherwise be time-barred when the amendment relates back to the date of the original pleading.[4] Defendants do not dispute that the claim against them as individuals arose out of the conduct, transaction or occurrence set out in the original Complaint, thereby satisfying Rule 15(c)(1)(B). Rule 15(c)(1) provides, in relevant part, that amended pleadings may relate back when: the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within 120 days as

---

standards, a plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[4] Solivan's argument that the Illinois tolling statute is more generous than the federal equivalent is unavailing, because the Illinois statute's language—without Solivan's redactions—displays no material difference or more generous terms than the federal equivalent. 735 ILCS 5/2-616.

provided by Rule 4(m), the party to be brought in by amendment (1) received notice of the action so that it will not be prejudiced in defending on the merits and (2) knew or should have known the action would have been brought against it, but for a mistake concerning the party's identity.

Here, the incident occurred on March 3, 2009, and Solivan timely filed his §1983 suit on March 30, 2010, against Dart and several "John Doe" officers who were working their shift between 3 p.m. and 11 p.m. on that date, with specificity as to their duties save for their names.[5] On November 11, 2010, Solivan filed a motion for extension of time for discovery, explaining that his incarceration prevented him from taking depositions, conducting legal research, and obtaining crucial evidence such as the videotape recorded by the officers after the incident. (Doc. 33). Solivan stated that Defendants had still failed to disclose the identities of the unknown officers despite his repeated requests, and that consequently Solivan was unable to properly serve them and send them interrogatories. (Doc. 33). He requested an extension on the close of discovery for a period of six months after his release from incarceration. The Court granted his motion to extend discovery on December 1, 2010, expressly noting in the minute order that it was unclear whether Dart had yet provided the identities of the John Doe officers, and that the statute of limitations may expire on March 3, 2011. (Doc. 37). Solivan also filed a motion for an order compelling discovery

---

[5] Solivan's *pro se* Complaint listed as Defendants: Officer John Doe #1 who was the officer assigned to Division 1 Tier C2 for the 3 p.m. to 11 p.m. shift on March 3, 2009; Officer John Doe #2 who was assigned to the catwalk and to do cell checks every 30 minutes in Division 1 Tier C2 for the same shift; Officer John Doe #3 who came on the catwalk in Division 1 Tier C2 to do a cell check and was made aware of this incident on the same shift; Sergeant John Doe who was the sergeant assigned to Division 1 Tier C for the same shift; Lieutenant John Doe #1 who was assigned to take incident #09-03-01-0065 and record video tape #09-01-033 in Division 1 for the same shift; Sergeant John Doe #2 who took incident #09-03-01-0065 and recorded video tape #09-01-033 with Lieutenant John Doe #1 in Division 1 for the same shift; and other "John Does" involved in his eventual medical attention at Cermak Medical Center. (Doc 5).

so that Dart would identify the unknown defendants, because Dart had provided only two last names and badge numbers, one of which was illegible.[6]

Defendants claim Solivan's action did not provide adequate notice, citing to *Wood v. Woracheck*, 618 F.2d 1225, 1230 (7th Cir. 1980). However, more recent law dictates that the focus of Rule 15(c)(1)(c) is on the defendant rather than the plaintiff. See *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485 (2010). Since *Krupski*, "[t]he only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph v. Elan Motorsports Technologies Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011), *reh'g denied* (Mar. 31, 2011),(Posner, J.) (reversing district court's dismissal, due to the proposed amendment's failure to relate back its substituted defendant after the statute of limitations had expired, in light of *Krupski*)[7]; *see also Smetzer v. Newton*, 1:10-CV-93-JVB, 2010 WL 3219135 (N.D. Ind. Aug. 13, 2010) (denying motion to dismiss John Doe officer defendants, despite "substantial case law in the Seventh Circuit that John Doe defendants described in a complaint do not meet Rule 15(c) because

---

[6] The Court examined the exhibit that Solivan attached to his motion, the Officers' Living Unit Log, and finds that the document reveals Thompson and his badge number, as well as what illegibly appears to be Revolorio.

[7] The Seventh Circuit cites to *Wood v. Worachek* when stating that a "potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *Id.* In this case, if Defendants were not substituted for the John Does, Defendants would be the beneficiaries of a slip of the pen when Solivan repeatedly penned his *pro se* motions against Dart and Cook County seeking the names of the officers based on their shift dates and times and posts at the MCC.

the word 'mistake' does not equate with 'lack of knowledge'", because *Krupski* may have changed the way John Does are treated under Rule 15(c) to permit amendment despite lack of "mistake").

In *Wood*, the court denied the amendment as not relating back because nearly six years had elapsed between the date the plaintiff took a police officer's deposition and the date he sought to amend the complaint to name the officer as a party defendant when the remaining named defendants were all jailers. 618 F.2d at 1230. In contrast here, Solivan displayed diligence when he timely filed his *pro se* Complaint and repeatedly sought the names of the officers he cited as John Does in his timely *pro se* filings with the Court. He identified the John Doe officers as best he could based on their shift times on specific dates and at specific posts in the MCC and based on the incident log number for his injuries. *See* footnote 4, *supra*. He filed his *pro se* Complaint on March 30, 2010, and yet as of December 1, 2010, the Court noted that it was unclear whether Dart had yet provided the identities of the John Doe officers to Solivan, in response to his repeated requests for their names. (Docs. 5, 37). Based on Solivan's repeated inquiries to the MCC, which are documented in the Record as motions to compel to which Dart and Cook County counsel remained relatively unresponsive, and motions for extensions of time due to Cook County's delay in providing the officers' names, it is evident that the officers he identified by shift date and time knew or should have known that he sought to name them individually as defendants in his suit.

Although Solivan's counsel appears to have been careless in amending the *pro se* Complaint despite having identified the officers, the Seventh Circuit held that while a plaintiff's carelessness in failing to discover his mistake is relevant to a defendant's claim of prejudice, "carelessness is no longer a ground independent of prejudice for refusing to allow relation back." *Joseph*, 638 F.3d

9

at 650. Furthermore, Dembosz, Thompson and Revolorio do not argue that they experienced delays in service or insufficient notice so that they would be prejudiced in defending on the merits. *See also Woods v. Ind. Univ.-Perdue Univ. at Indianapolis*, 996 F.2d 880, 888 (7th Cir. 1993) ("The statute of limitations does not insulate from suit an individual who did not initially receive service (or other notice) in the correct capacity, so long as no prejudice resulted."). Therefore, they should not be insulated from suit by an inmate who diligently sought their names to properly prosecute his claim. Therefore, the Court finds that Solivan has satisfied Rule 15(c)(1) in that his naming Defendants Dembosz, Thompson and Revolorio relates back to his original filing.

**B. The Complaint States a Claim for Deliberate Indifference**

Solivan, as a pretrial detainee, was constitutionally protected from punishment by the due process guarantee of the Fourteenth Amendment, and his claim is analyzed under the cruel and unusual punishment clause of the Eighth Amendment. *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003) (pretrial detainee was "entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment"). Jail officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). An "official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. To determine liability, a violation consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state

of mind was one of "deliberate indifference" to the deprivation. *Id.* at 834; *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991). Deliberate indifference in such circumstances is defined as "criminal recklessness." *Farmer*, 511 U.S. at 839-840.

The objective prong, a deprivation of life's minimal necessities, includes "reasonable safety." *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 199-200 (1989). To claim that prison officials failed to prevent a violation of an inmate's need for safety under the objective prong, a plaintiff must demonstrate "conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 832-33 ("[G]ratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective [nor] squares with evolving standards of decency."). Solivan claims that the prison conditions presented a substantial risk of serious harm by Revolorio's failure to leave the bubble during his shift, from where he could not see into the cells, nor into the common areas where inmates might be walking outside of their cells, nor hear any noise coming from the cells. (¶¶22, 26, 27). Revolorio's failure to leave the bubble for almost three hours, if true, violated Jail Standards that require a visual check every 30 minutes, and left the catwalk—the only vantage point from which an officer could personally observe the common areas and cells—unmanned by an officer. (¶¶28, 30-33). Although pleading a violation of a state jail standard, in and of itself, does not state an Eighth Amendment claim, *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087(7th Cir. 1986), Solivan has presented factual allegations that, if true, indicate that inmates are left visually and audibly unsupervised for hours, knowing that a substantial risk of harm is present. In addition, Solivan contends that there were no light bulbs in his cell, no intercoms or emergency call buttons in the cells, and no overhead cameras on the Tier.

(¶¶34-36). If taken as true that cell doors could be manipulated by inmates by inserting toothpaste caps or bottle caps to obstruct the locking mechanism, and they would still register as locked on the central panel in the bubble, these circumstances could nave created a substantial risk of harm that materialized when Solivan was attacked inside his cell and screamed for two-and-a-half-hours without an officer coming to his aid. Giving Solivan the benefit of the inferences to which he is entitled at the pleading stage, Revolorio may have been visually and audibly disconnected from the inmates to such an extent that attacks could occur in a dark area that he believed was locked, while knowing that the inmates knew the limits of his supervision. Solivan states that the harm he suffered was significant: severe injuries to his right eye, bleeding from his ear, numerous contusions on his face, and fractures to his lower back that left him in a wheelchair for the following 10 months. The attack that Solivan endured was severe and presumably unwarranted. *See, e.g., Pippion v. Peters*, 1994 U.S. Dist. LEXIS 13892 (N.D. Ill. Sept. 28, 1994) (denying motion to dismiss a claim for failure to protect because plaintiff-prisoner sufficiently pled a substantial risk of harm that he was beaten severely by several inmates and immediately following the assault, his eyes were both swollen shut, required stitches, and left permanent vision damage). Consequently the Court finds that Solivan states a viable claim that a substantial risk of harm may have existed.

The Court's inquiry cannot stop there, as the second element of the officers' actual state of mind of "deliberate indifference" to the deprivation must also be sufficiently pled. Deliberate indifference is something approaching total unconcern for a plaintiff's welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), *citing McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). A defendant must have

"actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.), cert. denied, 479 U.S. 816, 107 S. Ct. 71, 93 L. Ed. 2d 28 (1986) (abrogated on other grounds); *see Sellers v. Henman*, 41 F.3d 1100 (7th Cir. 1994); *Duane*, 959 F.2d at 677. Such total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill*, 944 F.2d at 347. The Seventh Circuit has also defined "deliberate indifference" in more vivid terms:

> Prison employees who act with deliberate indifference to the inmates' safety violate the Eighth Amendment. But to be guilty of "deliberate indifference" they must know they are creating a substantial risk of bodily harm. If they place a prisoner in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know. But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.

*Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (citations omitted). Solivan pleads that as a pre-trial detainee, he was the only person of Hispanic origin housed in the maximum security Tier C, Deck 2, while the significant majority of the other inmates were African-American. (Doc. 68, ¶17). These circumstances, Solivan argues, puts him in an "identifiable group of prisoners who are singled out for attack" which would obviate the need to establish Defendants' actual state of mind. *See Farmer*, 511 U.S. at 843-844. When making reasonable inferences in favor of Solivan, it is plausible that he faced an identifiable risk as a Hispanic pre-trial detainee housed in the maximum security ward of the CCDOC, of which the majority were African-American and knew that from within his cell, his beating would not be seen or heard by the only guard on duty

for three hours. At this stage, Solivan has pled sufficient facts that, if true, would support a claim for relief. *See Zarnes v. Rhodes*, 64 F.38 285, 289 (7th Cir. 1995) (remanding case when *pro se* plaintiff's claim of "imminent potential" for assault by her mentally-ill cellmate was dismissed by district court for failure to plead "deliberate indifference"). Consequently, the Court finds that Count I of Solivan's Complaint is sufficiently pled with regard to his individual claim against Revolorio for failure to protect.

Nonetheless, Count I fails to plead any facts that involve Thompson, Dembosz or Dart despite naming them in the claim as jointly and severally liable for compensatory damages. Consequently, Count I is dismissed with respect to Thompson, Dembosz and Dart.

As for Count II, Solivan alleges that Revolorio's supervisor, Thompson, knew of the aforementioned cell conditions that posed a substantial risk of serious harm and violated Jail Standards, but failed to supervise Revolorio, which constitutes deliberate indifference. (Doc. 68, ¶70-74). Count II also alleges that Dembosz was the shift commander at the time of the incident and supervisor to both Thompson and Revolorio, and failed to correct the security problem posed by the cell doors and the violations of the Jail Standards; allowed Revolorio to violate the Jail Standards requiring visual checks every 30 minutes; knew the inmates had received maximum security ratings but failed to supervise his subordinates properly, and failed to investigate why Solivan was injured and never read the USAO Report; behavior which constituted deliberate indifference. (¶¶62-69). Section 1983 creates a cause of action for damages based on personal liability; thus a plaintiff must show a defendant's personal involvement or participation, or direct responsibility for the unsafe conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269,

273 (7th Cir. 1986). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to Section 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). Solivan has failed to state sufficient facts with which the Court could infer that Dembosz and Thompson had personal knowledge of the circumstances on March 9, 2009, in that Solivan's cell remained open, and that several inmates entered and beat him and that Solivan was left without aid for two and a half hours. Consequently, neither Thompson nor Dembosz can be held liable for deliberate indifference and Count II against them is dismissed.

Count II also alleges that Dart, in his official capacity, never took steps to correct severe understaffing or to implement policies for improving the security features of the cells at CCDOC, despite his knowledge of the USAO Report, thereby constituting deliberate indifference to the prison conditions posing a substantial risk of serious harm. (¶¶58-60). It is unclear to the Court, and to Defendants, whether Solivan's counsel meant for this claim to be converted into an individual claim when he made his oral argument before the Court. If the claim is to be converted into an individual claim, the Complaint does not state facts from which the Court could infer that Dart had any personal knowledge of or direct personal involvement in the events that led to Solivan's injuries on March 3, 2009. That Dart is Revolorio's, Dembosz's and Thompson's superior does not make him liable for their actions under the doctrine of *respondeat superior*. *Gayton v. McCoy*, 593 F.3d at 622. In the alternative, in the proper circumstances, a prisoner could maintain an official capacity claim against Dart. An official capacity damage claim against a municipal official "is not a suit against the official as an individual; the real party in interest is the entity." *Wilson v. Civil Town of Clayton, Indiana*, 839 F.2d 375, 382 (7th Cir. 1988). Municipalities cannot be

15

held liable for damages under section 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A "custom" or "policy" can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice, that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a "custom or usage" with force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000). Solivan does not state facts that suggest that Revolorio's failure to visually supervise the inmates and cells when he knew that he was unable to see them from the bubble, or failure to come to Solivan's aid for two and a half hours, were the result of a policy or practice, or that such a practice in 2009 was evident in the USAO Report and was established or sanctioned by Dart. Furtheremore, "[o]rdinarily, one incident is not sufficient to establish a custom that can give rise to *Monell* liability." *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000). Solivan does not allege that the conditions he identified as the cause of his injuries were also the cause of other predictable and preventable injuries to which the officers were deliberately indifferent. Accordingly, Solivan has not stated either an individual or an official capacity damage claim against Dart, or Revolorio, Dembosz or Thompson. Count II is dismissed.

In addition, Solivan clarified in his Response to Defendants' Motion to Dismiss that his claim against Cook County was based on its role as a necessary and indispensable party to the suit to indemnify Dart, Dembosz, Thompson and Revolorio. Therefore, the Court grants Solivan leave

to amend his Second Amended Complaint to allege an indemnification charge against Cook County.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court denies the Motion to Dismiss with respect to Revolorio in Count I; grants the Motion with respect to Dart, Dembosz, Thompson and Cook County in Count I; and grants the Motion with respect to Count II. The Court also permits Solivan leave the file an Amended Complaint within 14 days to allege an indemnification charge against the County relating to Count I against Revolorio.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 14, 2012